2L 405
5L 158

J. D. WILLIAMS, Ex. of B. GRAHAM, *v.* H. G. MILLER, Adm'r, for the use of J. L. PULLIAM.

1. BILLS AND NOTES. *Endorsement. Guarantor. Notice.* An endorsement on a note in these words, "I transfer the within note to C. S. P., and agree to be liable after the maker of the note is sued to insolvency, (signed) B. G.," is a conditional guaranty, and the holder need not give the endorser any notice of failure to make the money out of the maker by the means stipulated for, unless required by the endorsement in such cases, but in order to recover he must show a compliance on his part with the conditions on which the guarantor's liability is to arise.

2. CHARGE OF THE COURT. *Request for instructions. Must be specific, not general.* After the court had charged the jury, counsel for defendant stated to the court that his Honor had heard his argument on the trial, and requested the court "to charge the jury upon the points of defense made in his argument," which the court declined to do. *Held,* there was no error in this, because the request was too general, in that it failed to designate either the point of objection to what had been charged, or to specify the point omitted on which instructions were desired.

**3. PRACTICE.** *When request for instructions should be made.* After the jury · had been charged and had retired, counsel prepared instructions in writing and handed them to the court with the request that the jury withhold their verdict until such instructions, and such other matters as might be presented, were given them by the court, which was refused on the ground that the jury had been charged without further request at the time than the general request alluded to above, held not to be error.

**4. SAME.** *Same.* After the jury have been charged, if either party desires further or different instructions given to them, it is the duty of such party then to present the desired instructions, in writing if the court so requires, and if such party is not then prepared⁻ to present the points on which he desires instructions, he should ask for and be allowed a reasonable time in which to do so.

**5. SAME.** *Request for instructions should be in writing.* The better practice is to require all such requests to be in writing, as preventing mistakes and unnecessary disputes between the court and counsel as to what was requested.

**6. NOTES AND BILLS.** *Conditional guaranty. Prosecuted to insolvency. When.* Where the holder of the·note, endorsed as set out above, promptly obtained judgment thereon against the maker, who was solvent at the time, and had execution issued thereon to the proper officer, who · failed to make the money because of the breaking out of the war, and an alleged general public sentiment where said judgment was obtained, which suspended the forcible collection of all debts, and made it dangerous for officers to collect money by compulsory process; and after the war said holder by process of revivor against the administrator and heirs of the maker, who had died in the meantime, exhausted his remedies against his estate, but without success; it was held that his right of action against the guarantor had accrued, although the sheriff might be liable for not making the money. The endorsement being construed to be a contract that the holder of the paper should, with reasonable diligence, sue to insolvency the maker of the paper, and not extending to other persons, such as clerks or sheriffs, who may render themselves liable for the debt by reason of official ·defaults about the matter.

**7. SAME.** *Same. Same. Not bound to pursue his remedy against property in other States.* In such cases of guaranty the holder is bound to sue to insolvency the maker, in the courts of the maker's domicile, but is not required to pursue remedies that he might have against the property of the maker in States other than that of his domicile, although the maker may have property in the State of the holder as well as in. his own.

Williams *v.* Miller.

8. Evidence. *Incompetent. Cannot be withdrawn. When.* A party who himself introduces incompetent evidence and takes the chance of thereby misleading his opponent by the proof of a fact being in, will not then be allowed to withdraw it to suit the exigency of his case.

FROM SHELBY.

Appeal in error from the First Circuit Court of Shelby county. C. W. HEISKELL, J.

A. WRIGHT for Williams.

H. E. JACKSON for Miller.

FREEMAN, J., delivered the opinion of the court.

J. W. Matthews, a resident of Marshall county, Mississippi, made two notes in October, 1859, payable to Barnett Graham. On the 24th of December, 1859, said Graham transferred said notes to C. S. Palmore by the following instrument:

"Memphis, Tenn., Dec. 24, 1879.

"I transfer the within notes to C. S. Palmore, and agree to be liable after the maker of the notes is diligently sued to insolvency. Barnett Graham."

Palmore afterward endorsed the notes to Joel L. Pulliam, guaranteing the payment of them after the maker of the notes should be sued to insolvency.

This suit is brought in the name of the administrator of Palmore for the use of Pulliam, the last endorsee. The declaration, after describing the notes setting out the transfers, bases the right to recover on the averment that the maker of the notes had been

diligently sued to insolvency, and nothing had been made out of his property to satisfy said notes or any part of the same.

Defendant filed a number of pleas to the declaration, the first two being denials of the endorsements set out in the declaration, the next two denying that the maker of the notes had been diligently sued to insolvency, and avering that by the use of fair and reasonable diligence the money could have been made; the fifth and sixth pleas deny that the defendant, as executor, is indebted to plaintiff in manner and form as alleged, thus tendering the general issue on the declaration. The other pleas need not be noticed, being equivalent to payment and statute of limitations. Upon the issue thus made the parties went to trial, when a verdict was rendered by the jury for the plaintiff, under the instructions of the court, from which an appeal in error brings the case to this court. From the statement it is seen that the only question presented to the jury was the liability of defendant growing out of the facts averred in the declaration, that is, the making of the endorsements and the guaranty therein contained, and the compliance by the plaintiff with the terms of the guaranty by having sued the maker of the note diligently to insolvency, and failure to realize his debt by such legal proceedings. This is the sole ground on which the claim of the plaintiff is averred to exist, which he is compelled to maintain in order to a recovery, and which he proposed to prove by way of charging defendant with liability.

Williams v. Miller.

The question of waiver of demand of the maker, and notice to endorser, or any liability arising out of the relation of endorser under the law merchant is not made by the pleadings, was not made in the court below, and need not be considered. Neither do we think the question of the right of a guarantor to notice that the maker of the note had been sued to insolvency under such an endorsement as the one now under consideration is before us on this record. No such question is made in the pleadings, and if it could have been raised, as it probably might have been under the general issue, still no such question was made in or ruled on by the court below, and we are not called on to revive any action of the court below on such a question. We but remark that the principle on which our cases go in cases of special endorsements of this character is that of contract, so that the parties are held to abide the terms of that contract whatever it may be. 7 Heis., 608.

The party seeking to charge another on such contract must show that the liability has arisen by way of compliance on his part with the conditions annexed by the agreements, whatever they may be. This would exclude the idea of any notice to be given in a case like this, if failure to make the money out of the maker by the means stipulated for, and only require that the conditions on which the guarantor's liability is contracted to arise, should be shown to exist in order to recovery. If any notice of performance of these conditions is desired, the party should stipulate for it.

While there are respectable authorities the other way, the rule we have given appears to us the most practicable, and having the advantage of more simplicity, best in accord with the nature of the transaction. In cases like the present, if we assume that notice is to be given, what shall such notice contain? Shall it state every step that has been taken in the effort to make the money out of the payee of the note, so that the party shall be able to judge whether the contract has been performed, or only the opinion of the holders, that he has performed his agreement and failed to obtain satisfaction of his debt. The former must be the case if it is to be of any practical utility, yet we know of no case that specifies what are to be the terms of such a notice, and to require it would be to impose a burdensome condition not contracted for by the parties, and of no practical advantage. It is sufficient that the guarantor may impose such terms as he chooses in order to his liability, and the plaintiff be required to show that these terms have been complied with in order to charge him.

But coming back to the case in hand. It is clear the only questions that can arise on the pleadings and issues before us, are as to whether the plaintiff has made out his case by showing that the maker had been diligently sued to insolvency, and the debt could not be realized. The verdict of the jury is a *prima facie* conclusion on the facts of the case at least, so that the main question is, whether there was any error of law in the rulings of his honor upon the admis-

Williams *v.* Miller.

sions of testimony during the progress of the cause, or
in the instructions given to the jury in his charge.
We examine the charge first, to see if it be correct.
It is in proof that suit was brought, and it is not
denied that it was brought in proper time in the
courts of Mississippi, where the maker of the note
resided, and a judgment had in the regular course of
judicial proceeding. It is insisted, however, very
earnestly, by counsel, that there was want of proper
diligence after this in using the process of the court
to enforce the collection of the judgment, which dili-
gence, if it had been used, would have or might have
realized the money on the notes guaranteed.

How the facts are from the proof in the record,
or what would have been our judgment on them if
called on to decide upon them in the first place, we
need not at present inquire. The jury have passed
on the question, and for the present we assume they
had evidence on which their findings might rest. The
question we consider is, did his Honor, the Circuit
Judge, charge the law correctly on the issues sub-
mitted to the jury, or is there any error in said in-
structions?

Before examining the matter of the charge of the
court, it is proper to dispose of a preliminary ques-
tion of practice presented by the facts stated in the
record. On the trial of the case after the evidence
had closed, and argument of counsel, the court, before
delivering his charge to the jury, asked counsel on
both sides if they had prepared any written instruc-
tions which they wished given to the jury, to which

they replied they had not. Thereupon the court proceeded to give the charge found in the record. When this was concluded, Judge Wright, counsel of defendant, said to the court: "Your Honor has heard my line of argument and the grounds of defense I have taken for the defendant in argument during the trial of this cause. I request your Honor to charge the jury upon the points of defense I made in my argument," to which the court replied, "reduce your points of instruction to writing," and declined to give any further instructions than those embraced in his charge, unless they were reduced to writing; and no further instructions, says the bill of exceptions, were ever asked for at the time by either party, except the request mentioned of Judge Wright, and no delay was asked by either party to propose further instructions at the time, and the jury retired to consider their verdict without objection by either party.

This was about 11 o'clock in the forenoon, the jury retired with the case, and the court proceeded to other business. Next morning, after the minutes were read and signed, Judge Wright presented to the court a series of instructions, fourteen in number, and made part of the bill of exceptions, and requested the court to recall the jury and charge upon the points therein presented. The court read the elaborate request, handed them to counsel for the plaintiff to see if he wished to prepare counter instructions. A request was presented, as stated, by counsel, that the jury should withhold their verdict until they should be again instructed by the court as requested by Judge Wright,

Williams *v.* Miller.

and such other matters as might be presented. The court declined to do this on the ground that they had been charged without further request at the time, except the general one mentioned above, by Judge Wright. Whereupon, after some further time spent in considering the case, the jury returned their verdict for plaintiff.

Upon these facts we hold his Honor did not err in the practice adopted, that after he had charged the jury, if further or different instructions were desired by either party, it was the duty of such party to present the instructions desired, in writing, if so required by the court, and the far better practice is to require such requests to be in writing, as preventing mistake and unnecessary disputes between the counsel and court as to what was requested, and if the party was not prepared to present the points on which additional instructions were desired, he should have asked for reasonable time to do so, which should be granted in a proper case in the sound discretion of the court. But to ask that the court shall, after he has charged the jury, take so general a question as the line of argument of counsel and give the jury instructions on the case as thus presented, is to fail entirely to designate either the point of objection to what has been charged, or to suggest or specify a point omitted on which instructions are requested. This practice is too general to be permitted, and no court can be required to respond to so pointless a request. The opposite practice is easy to be conformed to, and serves to present distinctly to the mind of the court the ques-

tion on which he is to decide, is but fair to the court and due to the regularity and precision which should be given in the administration of the law in such cases.

In this view of the record we can but look at the charge as given and see if there is either any affirmative error therein or such failure to give the law correctly in the case, as would mislead the jury in coming to a proper conclusion, and if no such errors are found, then the action of the court must be held to be correct, and no reversal can be had for matter contained in the charge.

The principle is settled that these restrictive endorsements are special contracts, to be construed as any other contract, so as to carry out the intention of the parties, the party being bound only by the terms of his undertaking. See 7 Heis., 608. We need but read this contract to see that the guarantor has only agreed to be liable on the one condition on which the declaration goes, that is, that the endorser should sue Matthews, the maker, diligently to insolvency. When this was done and the debt not realized, the liability of Graham as guarantor arose, but not before. We need not say how this would be if Matthews had been insolvent at the date of the guaranty. That question is not before us, as it is conceded he had abundant property out of which the debt could have been made at that time. The proof shows that suit was brought in due time, and judgment duly had. The charge of his Honor was short and substantially as follows: "That the jury must find

suit properly brought, judgment obtained, and then an execution issued, within the period required by law;" he then said, "and if you are further satisfied that it was not the fault of the plaintiff or his attorneys at Holly Springs, that the sheriff failed to make the money on the execution by the next term of the court at Holly Springs, and you are further satisfied that Governor Matthews died during the war, and that at the first term of the Probate Court of Marshall county, Miss., after the war, administration was granted on his estate; that at the first term of the circuit court of that county at which business was done, plaintiff's attorneys caused *sci. fa.* to issue to the administrator to revive judgment, and it was so revived; that there was no personal property of the estate to make the debt, and the plaintiff's attorneys then caused *sci. fa.* to issue to the heirs at the first term after ascertaining there was no personalty out of which to make the judgment; that they had judgment against the heirs, and proceeded to have the land sold, but that the proceeds of that sale were exhausted on the payment of prior enrolled judgments, and you are further satisfied that the estate was in fact insolvent at the time of the sale, then you will find for the plaintiff." He then stated the converse of these propositions, that is, "that if the plaintiff failed in any of these particulars, they should find for the defendant."

The first proposition contested in this charge is, that if it was not the fault of plaintiff or his attorneys that the sheriff failed to make the money on the execution by the next term of the court, that is,

March term, 1861, then plaintiff could recover, not-withstanding this failure, provided the other steps were afterward taken, given by his Honor.

The proposition assumes that the sheriff had been or might have been guilty of breach of official duty in not making the money, but if this was not the fault of plaintiff or his attorneys, then such breach of official duty was not sufficient defense to this action. On this question the facts are about these. The execution issued and came to hand of the sheriff in due time. He says he had been sheriff for many years in Marshall county; that his uniform habit had been, in such cases, to notify the party defendant, and if he was responsible the money was paid by the return day of the process. He says he rarely made a levy unless there were some special circumstances in the case making it necessary.

Before the return term, January 19, 1861, the State of Mississippi seceded, and the whole country, as the proof shows, and we all know, was filled with the din of preparation for war, so that no court was held at March term. The general state of the country, as well as public sentiment, he says, was against the collection of money by compulsory process, and by common consent and in obedience to this sentiment, all process of this kind was suspended.

He adds, a man or a public officer's safety was endangered by any act in opposition to this public sentiment which had taken possession of the minds of the whole community, to which there was no exception at the time. For these reasons, he says, he

failed to proceed under the execution to make the money as he did in all other cases.

If he returned the execution, as is probable he did, it was with the return, "suspended by the condition of the country." Whether this is a sufficient defense to the officer in a proceeding against him for failure to make the money, we need not now determine. Certain it is, that it seems to present a state of facts calling for the application of the maxim, "that in the midst of arms the law is silent," if any state of things can do so.

It would be an extremely hard rule that would require a public officer to brave the danger incident to his situation by enforcing an execution against the mass of public war sentiment thus depicted as aroused, when such a step would probably be deemed a breach of his loyalty to the cause of the excited masses around him. It will not do to judge his conduct with his then surroundings, from the standpoint of the present, with the quiet of peace pervading the land. Assuming him liable, however, is the plaintiff bound now to look to him, or was he bound to have proceeded against him and sureties before his right accrues to go on the guarantor, because this is included in the terms and purview of his contract to "sue Matthews diligently to insolvency" before Graham was bound to respond to the demand? A most ingenious argument is pressed on us by the counsel of defendant in favor of this proposition. To this we cannot assent.

Authorities are cited that may serve, by ingenious

manipulation, to give countenance to this view, but when closely examined on' the facts of the cases, do not sustain the conclusion. We look to two only of these cases. The first is a case of *Given* v. *Bindlove,* 2 How U. S. R., Curt. Ed., p. 17. That was simply the case of a motion made by Bindlove in the Circuit Court of the United States for Mississippi against Given for failure to make money on an execution. The objection was taken that the record of the motion did not show that Bindlove was a citizen of another State, and the point was sought to be made of want of jurisdiction for this cause.

The court, in answer to this, did say, *arguendo,* that the remedy as well as attachment which might have been resorted to is but an incident of the suit between the plaintiff and defendant to the execution, of which the proceeding against the officer was a part, and the jurisdiction for this was on the original suit, p. 19. While this may be conceded, it does not present the question now before us, and it is far from adjudging it. It might well have been held that the officer could not defeat the plaintiff's remedy against him in such a case, and deprive the court of jurisdiction to enforce the proper execution of its process, without involving the proposition that a guarantor who had bound himself, and is sought to be held strictly to his contract, to sue another debtor to insolvency, should also be required to sue the sheriff and his sureties to like insolvency under the same contract.

The other case is *Eason* v. *Dixon,* 2 Deveraux & Battle Law R., 78, where a party endorsed a consta-

ble's receipt for collection of a note in payment of his own debt. He simply sued the guarantor on his endorsement, which was only this, "pay the within to Nathan Eason." The Circuit Judge held it a direct undertaking to pay, if plaintiff gave value for the receipt. The court reversing this judgment say the endorsement did not amount to more than a guaranty, and if so, that the guarantor was bound to use such diligence to collect the debt from the maker of the note on the constable, as a prudent man would under like circumstances to collect his own debt.

This was all very well, but the court does not even hold this was a guaranty, as it certainly was not such a one as is now before us, on the assumption that it was a guaranty on transfer of a constable's receipt for collecting a claim, that the liability of both the debtor and the constable had been assigned, and was in the minds of the parties to the contract, and shall have been duly exhausted before going on the assumed guarantor. We could not so construe this contract unless we can assume that Graham contracted not only that Matthews should be sued to insolvency, as we have said, but also the sheriff and his sureties, and we may add, any other officer whose duty it was to perform an official ministerial act in connection with the case. The clerk and his sureties, if they had failed to issue execution properly, and loss had been incurred, would equally have been included. This would be to enlarge the contract beyond what the parties have expressed or intimated— not to construe a contract, but to make one. The

plain meaning of the contract is, that the assignee should diligently pursue the ordinary and usual remedies in such cases by suit against Matthews, unless exigencies should arise where an extraordinary one has demanded such an attachment. It has to be against Matthews, however, but no one else. This is the terms of his bond. It cannot be extended beyond its fair import. Such is substantially the holding of this court in two late unreported cases. *Williams* v. *Miller, Adm'r*, Nashville, 1876; *Keeble* v. *Jones, Com.*

There being no error on this point, if the defendant desired further instructions presenting the question of proper diligence on the part of plaintiff or his attorneys in seeing that the sheriff did not neglect his duty, or in urging or requiring, he should use more than his usual activity in securing payment of the claim, and that this question should be passed on by the jury, it was his duty to have presented the point distinctly to the court, with the request that the jury be so instructed. This he failed to do, except in the general way we have stated. No error can, therefore, be predicated of the failure of the court in not doing specifically what it was not requested to do. The defendant must be held to have waived instructions on the point thus omitted. Nor is the question before us as to whether plaintiff's attorneys should have done more than have the execution in the hands of the sheriff, or than was done. No further instructions having been requested on this subject than was given by his Honor, that the failure should not be the result of any fault on their part; nor whether an exe-

Williams *v.* Miller.

cution should have been issued to another county, or might have been, suffice it to say, if the opinion of the court, or the action of the court was desired on these questions further than he had charged, it was open to defendant to have invoked such action, and without such action error cannot be assigned for the non-action of the court in such a matter under the facts of this record. Such is the uniform ruling of this court in the latter cases. See 9 Heis., 30, 776. This brings us to the question whether the court erred in the admission or refusal to withdraw certain evidence on the record.

It is said parol proof was admitted of the facts of other judgments prior to this, and that like proof is found of the fact of widow's dower being assigned out of the home tract, and that the insolvency of the estate had been suggested.

The sufficient answer to all this is, that this testimony is given in response to questions put by defendant on cross-examination—questions that reasonably called for such answers, and thus got before the jury without any exception to it. That at the foot of this deposition is an endorsement requiring the cross-interrogatives to be fully answered, and on these terms assent is given to the taking of the deposition waiving all mere matters of form. This is signed Wright and Stokes, attorneys for the defendant.

On motion of defendant's counsel, portions of testimony bearing on some of these questions was ruled out by the court or withdrawn from the jury, so far as brought out in the depositions of Falconer and

Davis, but that portion which proved older judgments. and the appropriation of the proceeds of sale of land, he refused to withdraw after the matter had been read to the jury by defendant. In this, as we have several times held, there was no error. The party could not be allowed to introduce such testimony before the jury himself, and take the chances of thus misleading his opponent by the proof being in, and then withdraw it, as might suit the exigency of his case. It was not the best proof the question admitted of, but the defendant might, if he choose, permit secondary proof to be made, and this he had done.

The only other question deemed necessary for decision is, whether the holder of the paper was bound to exhaust property or sue the maker of the notes to insolvency in Tennessee as well as in Mississippi. It is shown that Pulliam resided in Tennessee and Matthews in Marshall county, Mississippi, when the notes. were made, and continued to reside there till his. death, or at any rate that was his home. It further appears he had some considerable estate in the city of Memphis, which has been administered there by an administrator appointed by the County Court of Shelby county. We hold the fair construction of this contract is, that the party shall be diligently prosecuted to insolvency in the courts of his domicile. It was. there and not elsewhere, as a matter of course, he was to be sued, and that suit diligently prosecuted. This excludes the idea that he was to be sued diligently somewhere else, or both where he lived and also wherever he might have property.

The other view would require that a party shall seek the property of his debtor, it might be in half dozen States, if he happened to have property in so many, in order to entitle him to look to his guarantor. No such result was ever contemplated by the parties. The authorities are in accord with this view. 6 Col., 347; 3 Head, 533.

This disposes of all the material questions in this case. We add that after a careful examination of the record, the ends of justice have been fairly reached in this result. It is the case simply of a party receiving these notes with the guaranty on them to sue diligently the maker. Suit was brought at once, judgment obtained in due time, execution issued and placed in the hands of the officer of the law, whose duty it was to execute the process and make the money.

The debtor was amply solvent at the time, and the prudence of an ordinarily diligent and energetic creditor would not have suggested any need for any extraordinary steps beyond this to make the money, under the state of facts then existent.

But in a few days after this execution came to the hands of the sheriff, the election of Mr. Lincoln changed the entire current of business, and all was excitement and preparation for the great struggle that followed. Before the return term of the execution it became perilous in the extreme, if not impossible, all things considered, to execute it. Courts then ceased to be held, and so remained until after the war. This debt stood suspended—all other debts of the time were—simply sharing the fate of all others. There

can be no good reason now why we should apply a rule to it that should exempt it from the common fate that all others stand. When the war was ended, immediately it has been proceeded with, and by the agency of the courts has certainly been diligently prosecuted. But the result of war had swept away the property of the debtor, and his estate is insolvent. Why should the creditor, under such circumstances, lose the liability of the guarantor on his contract? Certain it is that if it had not been for the war, and its violent interruption of civil business, there could never have been any complaint, the debt would have been long since realized.

No reason can be given why this plaintiff shall be held responsible and lose his debt because of this untoward state of things, for which he was not responsible more than others. This would be to impose the entire burden of the war on him to the extent of his claims, and make him forfeit his rights because of that against which he was powerless to prevent, and could in nowise by any human prudence have provided against.

On the whole, we see no reason to be dissatisfied with the result, and affirm the judgment.